# United States District Court

for the

## Eastern District of New York

X-----------------------------------------------------------X
METRO-GEM LEASING & FUNDING CORP.

                                  Plaintiff,

       -against-

 MACKY DANCY, TYRONE HILL, DANCY
AUTO GROUP LLC., DANCY AUTO GROUP
OF GREAT NECK LLC, KASSEM DEAN,
KASSEM DEAN a/k/a SWIZZ BEATZ, SWIZZ
BEATZ PRODUCTIONS, INC. , AK
WORLDWIDE PRODUCTIONS, INC.,  JOHN
WILLIAMS III, GREAT NECK AUTO SALES,
LLC and JOHN DOES #1-10

                               Defendants.
X-----------------------------------------------------------X

Civil Action No. 2:16-cv-05245
(SJF)

**VERIFIED AMENDED
COMPLAINT**

      Plaintiff METRO-GEM LEASING & FUNDING CORP., by and through their

attorney, PAUL J. SOLDA, ESQ., an attorney duly admitted to practice in the State of New York

and before the E.D.N.Y. -  alleges as follows:

      1. This is an action by a domestic business corporation brought to remedy deprivation of

their rights by certain individuals, together with the enterprise and their co-conspirators - pursuant

to a pattern of racketeering activity alleged to be in violation of 18 U.S.C. §§1961 and 1964 et. seq. -

the result of which has caused extensive monetary damages and the need for  related legal and

equitable relief.

## JURISDICTION

      2.  Jurisdiction of the Court is proper pursuant to 28 U.S.C. §§1331, 1343 and 18 U.S.C.

§1961  et. seq. - as the action arises with questions pursuant to said statute.  Jurisdiction is

accordingly founded on the existence of a federal question.

3.  Pursuant to 28 USC §1367, supplemental and pendent jurisdiction also exist as there are related and intertwined state claims at issue which form a part of the same controversy.

4.  As the unlawful practices complained of herein occurred largely within the jurisdictional boundaries of the Eastern District of New York, venue here is accordingly proper.

<u>PARTIES</u>

5.  METRO - GEM LEASING & FUNDING CORP. ("METRO GEM") is a New York corporation operating primarily out of 378 Schermerhorn Street, Brooklyn, NY 11217.

6.  METRO GEM is in the business of funding the acquisition of various high end motor vehicles for leasing on the sub-prime market.

7.  Defendant MACKY DANCY (hereinafter "DANCY") is a New York State resident maintaining a last known address of 75 Brentwood Lane, Valley Stream, NY 11581.

8.  Defendant TYRONE HILL (hereinafter "HILL") is a New York State resident maintaining a last known address of 72 Ridge Drive, Westbury, NY 11590.

9.  Defendant DANCY AUTO GROUP LLC is a New York limited liability company which maintained an address of 105 Northern Blvd., Great Neck, NY 11021.[1]

10.  Defendant DANCY AUTO GROUP OF GREAT NECK LLC is a New York limited liability company maintaining an address of 105 Northern Blvd., Great Neck, NY.

11.  Defendants DANCY and HILL are the principle majority owners and operators of these

---

[1] Based on New York State Division Corporate Records, DANCY AUTO GROUP LLC was dissolved on September 4, 2015

two companies - DANCY AUTO GROUP LLC and DANCY AUTO GROUP OF GREAT NECK LLC.

12.  Together, these individuals have co-managed such motor vehicle dealerships licensed by the State of New York, Department of Motor Vehicles - and have engaged in the principal business of buying, selling and leasing motor vehicles manufactured by various automobile companies.

13.  KASSEM DEAN is, upon information and belief, a New Jersey resident maintaining a last known address of "1 Apple Street, Englewood, NJ 07631"[2].

14.  KASSEM DEAN a/k/a SWIZZ BEATZ is, upon information and belief, a New Jersey resident maintaining a last known address of "1 Apple Street, Englewood, NJ 07631".

15.  SWIZZ BEATZ is, upon information and belief, an assumed "stage name" of defendant KASSEM DEAN - who is a notable hip hop recording artist and music producer.

16.  SWIZZ BEATZ PRODUCTIONS, INC. is, upon information and belief, a New York corporation operating out of One Penn Plaza, New York, NY 10119.

17.  KASSEM DEAN a/k/a SWIZZ BEATZ is, upon information and belief, the sole owner and operator of defendant SWIZZ BEATZ PRODUCTIONS, INC.[3]

18.  AK WORLDWIDE PRODUCTIONS, INC. is, upon information and belief, a New York corporation operating out of One Penn Plaza, New York, NY 10119.

---

[2] To protect the identity and resident location of this publicly known individual, plaintiffs have inserted a fictitious street address.

[3] Unless otherwise specified, defendants KASSEM DEAN, KASSEM DEAN a/k/a SWIZZ BEATZ and SWIZZ BEATZ PRODUCTIONS, INC. will hereinafter be referred collectively as "DEAN".

19. AK WORLDWIDE PRODUCTIONS, INC. is, upon information and belief, owned and operated by defendant DEAN's wife - Alicia Dean (a/k/a "Alicia Keys").

20. JOHN WILLIAMS III  is, upon information and belief, a Pennsylvania resident maintaining a last known address of 5515 Iroquois Street, Tobyhanna, Pennsylvania.

21.  GREAT NECK AUTO SALES LLC is, upon information and belief,  a New York limited liability company maintaining an address of 105 Northern Blvd., Great Neck, NY.

22.  GREAT NECK AUTO SALES LLC is, upon information and belief, a new entity created by defendants DANCY and HILL - intended in part to serve as a beneficiary of fraudulently conveyed assets originating from and transferred by DANCY AUTO GROUP LLC. and DANCY AUTO GROUP OF GREAT NECK LLC.

23.  Upon information and belief, there exist  other present but unidentifiable straw companies or individuals who have received assets and/or compensation arising out of the alleged activities of the defendants.

24.  Accordingly, JOHN DOES #1-10 represent such other unidentifiable individuals or organizations which may, in fact, be complicit with the above referenced defendants

<u>ALLEGATIONS COMMON TO ALL RICO COUNTS</u>:

25. In March, 2012, the principles of METRO GEM (Gary Denner and Mitchell Kaminsky), agreed to fund various sub-prime motor vehicle leases pursuant to deal by deal requests by defendants DANCY and HILL - utilizing their original two companies - DANCY AUTO GROUP

LLC. and DANCY AUTO GROUP OF GREAT NECK LLC[4].

26.  Typically, DANCY would telephone METRO GEM and advise that he had secured an individual/customer who was interested in leasing a specific motor vehicle.

27.  METRO GEM would then review the particular motor vehicle specifications together with the proposed lease contract upon receipt from DANCY - who both the U.S. mail and Internet to transmit said documentation.

28.  If the terms were acceptable, METRO GEM would fund the lease by depositing monies with DANCY in order to cover for the purchase of such motor vehicle.

29.  Acting as a registered New York State vehicle dealer, DANCY would ostensibly serve as a broker/agent for both METRO GEM and the prospective resulting lessee.

30.  DANCY would notably secure his compensation in the form of a commission - at lease inception.

31.  Pursuant to the parties agreement and developed custom, DANCY would identify METRO GEM in the lease contract(s) as the "lessor" and would in turn issue a motor vehicle title certificate to METRO GEM designating them as the appropriate owner.

32.  Following consummation of a lease, DANCY would dispatch the main page of said lease along with the registration documents via Internet and thereafter would ordinarily mail the complete document containing the signatory pages.

33.  Payments to METRO GEM under the contemplated leases would ordinarily be paid monthly by DANCY himself – who first presumably collected such monies from the lessees

---

[4] Unless specificity is otherwise required, these two defendants (DANCY AUTO GROUP LLC./ DANCY AUTO GROUP OF GREAT NECK LLC)  will forthwith be identified collectively as "DANCY AUTO"

themselves.

34.  This methodology, designed by DANCY, enabled him to later subvert certain deals by providing a false impression that the leases were otherwise legitimate and current.

35.  It is noteworthy that in the automobile leasing business, finance companies like METRO GEM could often wait several months - from lease inception - until the point came where it received a funded vehicle's title certificate.

36. As a consequence, METRO GEM was required to rely on the soundness of the initializing lease documentation, including the vehicle's registration and related documents (i.e insurance certificate).

37.  Accordingly, upon receiving such documentation, METRO GEM would have no cause to suspect any shortcomings.

38.  In total, 27 motor vehicles were funded by METRO GEM and leased to various individuals from the Spring of 2012 through the Spring of 2015.

39.  Unbeknownst to METRO GEM, however, defendants DANCY and HILL began operating a racketeering enterprise under the veil of DANCY AUTO, et. al. - staged to specifically defraud METRO GEM - by misrepresenting lease and registration documents and by converting (or attempting to convert) their vehicles and lease payments as well as by disrupting METRO GEM's recourse rights.

40.  Furthermore, DANCY and HILL conspired with at least two different lessees - with a preconceived plan to further defraud METRO GEM .

41.  That specific predicate acts were undertaken between 2013 and 2015 which included, amongst other things, manipulation/misrepresentations of: lease contracts, vehicle registrations,

vehicle dealer logs/DMV registry(s), inventory floor plans, vehicle title certificates and other related documentation.

42.   Significantly, it wasn't until July, 2015, that METRO GEM discovered that these defendants had engaged in widespread fraud against them.

43.   In addition to funding leases and purchasing automobiles, METRO GEM also financed the DANCY AUTO dealerships themselves - pursuant to a comprehensive loan agreement executed in January, 2014 - which had memorialized a loan of $4,000,000.00.

44.   That the loan was paid in accordance with its terms through July, 2015 - at which point in time DANCY, HILL and DANCY AUTO (together with other loan signatories) - defaulted.

45.   That it was then discovered that DANCY had falsified floor-plan vehicle reporting documents relative to the assets they maintained at their dealerships -  a necessary prerequisite pursuant to the loan and security agreement.

46.   Pursuant to said loan and security agreement, METRO GEM held the majority of DANCY's vehicle titles in the form of "open vehicle title certificates" - in order to secure same until a point-of-sale took place.

47.   That upon said default, however, METRO GEM discovered that at least six motor vehicles (all high-value Land Rover/Range Rovers) - had been deceptively shipped and sold overseas by DANCY who, upon information and belief, issued bogus duplicate title certificates[5].

48.   That several of these bespoken Land Rovers curiously reappeared in the United States

---

[5] As a consequence of the loan default, and action was commenced by METRO GEM, in October, 2015 and a judgment was subsequently entered on May 31, 2016 in the sum of $3,887,834.85 (see: *METRO GEM LEASING & FUNDING CORP v. DANCY AUTO GROUP LLC., ET. AL., SUPREME COURT, COUNTY OF NASSAU; INDEX NO. 606783/2015*)

within months after being shipped to China for resale here.

49.  Returning to the funding of leases, DANCY and HILL undertook a variety of fraudulent acts and on one specific occasion - issued a bogus registration under the specter of a bona fide lease, all while surreptitiously conveying away a *2014 Ferrari F12* (which METRO GEM had paid for) - to a third-party.

50.  At some point in time, defendants DANCY and HILL also conspired with certain lessees and in part had them redirect their monthly lease payments to themselves, rather than METRO GEM, and upon information and belief - altered pre-existing lease contracts by substituting themselves as the "lessor".

51.  These acts enabled DANCY to later collect vehicles themselves, all while frustrating METRO GEM's legal recourse rights.

52.  Further, sometime early in 2015, upon information and belief, defendants DANCY and HILL permitted a certain individual (known as a hip-hop contemporary W. "Slow-Bucks" Lubin) to operate a *2013 Ferrari California* for nearly one week - despite having no proper documentation or registration.

53.  Thereafter, "Slow Bucks" had a single car accident resulting in a near-total loss and which point these parties conspired in order to refrain from reporting the subject accident to any authorities.

54.  That upon information and belief, these parties planned to strip valuable Ferrari parts with a view to trafficking same on the secondhand market.

55.  Later, the *2013 Ferrari California* was traced by METRO GEM and found to be in a vehicle repair shop located in Nassau County, New York - existing in a state of complete disrepair.

56.  With regards to another particular lease, defendants DANCY, HILL and DEAN misled METRO GEM into a false impression that a bona fide lease had in fact been consummated when in fact they converted a *2014 Ferrari F 12* and later surreptitiously sold it to a third-party.

57.  These motor vehicles were notably leased and subsequently registered and titled in various states including, New York, New Jersey, Pennsylvania as well as other random states including Tennessee and Texas.

58.  That there acts accordingly involved and affected interstate commerce in its broadest sense.

59.  That defendants acts constituted a clear pattern of a close ended racketeering scheme specifically designed to defraud METRO GEM.

60.  To reiterate, it was not until close of July, 2015, that METRO GEM discovered the extent of DANCY's tortious misconduct - which included (in addition to the leased vehicles funded by METRO GEM) - fraudulent concealment of its dealership's asset values as well as an undisclosed lawsuit brought by TD Bank (whom they had contracted with to enable customer financing for retail purchases of other additional motor vehicles)[6].

Predicate acts common to defendant KASSEM DEAN a/k/a SWIZZ BEATZ:

61.  On or about January 30, 2013 DANCY contacted METRO GEM and excitedly discussed that his long time friend, KASSEM DEAN, would be interested in leasing several exclusive

---

[6] The TD Bank lawsuit (entitled *TD Auto Finance LLC v. Dancy Auto Group, LLC, USDC, EDNY, 2:14-cv-04159*) charged DANCY with fraud and other related tortious acts driven by their manipulation of retail sale and financing contracts and particularly by over stating what car options a vehicle actually had.

automobiles - for use by himself and his wife, Alicia Keys.

62. On February 1, 2013, METRO GEM agreed to initially fund the purchase and lease of a *2012 Karma Fisker* - the cost of which was approximately $98,000.00.

63. The ensuing lease was issued to defendant SWIZZ BEATZ PRODUCTIONS, INC. for a term of 42 months having a monthly rate of $1,794.00.

64. The *Karma Fisker* vehicle was notably paid in accordance with the contract terms until April, 2014 – at which point in time it was traded in by DEAN for a lease of another vehicle - a *Mercedes-Benz "G Wagon"*.

65. That on April 25, 2013, METRO GEM agreed to fund the purchase and lease of a *2013 McLaren Spyder* - the cost of which was approximately $337,000.00.

66. The ensuing lease was issued to defendant SWIZZ BEATZ PRODUCTIONS, INC. for a term of 36 months having a monthly rate of $2,184.14.

67. The *2013 McLaren Spyder* was notably paid in accordance with the contract terms until September, 2013 – at which point in time it was traded in by DEAN for a lease of another vehicle - a *2012 Lamborghini Aventador*.

68. That on June 15, 2013, METRO GEM agreed to fund the purchase and lease of a *2013 Land Rover/Range Rover Supercharged* - the cost of which was approximately $155,000.00.

69. The ensuing lease was issued to defendant AK WORLDWIDE PRODUCTIONS, INC. for a term of 39 months having a monthly rate of $1,741.00.

70. The *2013 Land Rover/Range Rover Supercharged* vehicle was notably paid until June, 2016 - at which point in time it curiously went into default.

71. As referred hereinabove, on or about October 30, 2013 METRO GEM agreed to fund

the purchase and lease of a *2012 Lamborghini Aventador* - the cost of which was approximately $412,213.48.

72. The ensuing lease was issued to defendant SWIZZ BEATZ PRODUCTIONS, INC. for a term of 60 months having a monthly rate of $6,988.00.

73. The *2012 Lamborghini Aventador* vehicle was notably paid in accordance with the contract terms until December, 2014 - at which point in time it was traded in by DEAN for a lease of another vehicle - the bespoken *2014 Ferrari F 12*.

74. On or about February 15, 2014 METRO GEM agreed to fund the purchase and lease of a *2014 Mercedes-Benz G Wagon 550* - the cost of which was approximately $143,000.00.

75. The ensuing lease was issued to defendant SWIZZ BEATZ PRODUCTIONS, INC. for a term of 48 months having a monthly rate of $1,699.00.

76. The *2014 Mercedes-Benz G Wagon 550* vehicle was notably paid until March, 2016 - at which point in time it too curiously went into default.

77. Upon information and belief, early in 2016, DANCY conspired with DEAN so as to have DEAN deliver the subject vehicle to DANCY - without any approval or release by METRO GEM.

78. That it was the plan of these defendants to enable DANCY to surreptitiously attempt to resell or re-lease same to a third-party - irrespective of the rights of METRO GEM.

79. That these parties hid the subject car during that time – in order to avoid repossession efforts and effectively did so for several months – until it was eventually discovered and repossessed from DANCY's home on or about August 20, 2016.

80. That the *2014 Mercedes-Benz G Wagon 550* was used in an unauthorized fashion and its illegal transfer interstate was in violation of 18 USC §§2321 and/or 2312, 2313.

81.  Back on June 15, 2014, (before any wrongdoing had been discovered) METRO GEM

agreed to fund the purchase and lease of a *2014 Rolls Royce Wraith Coupe* - the cost of which was

approximately $345,000.00.

82.  The ensuing lease was issued to defendant SWIZZ BEATZ PRODUCTIONS, INC.

for a term of 48 months having a monthly rate of $5,874.78.

83.  The *2014 Rolls Royce Wraith Coupe* was notably paid in accordance with the contract

terms until June, 2015- at which point in time it was traded in by DEAN for a lease of another

vehicle - a *2015 Bentley Continental GT Convertible*.

84.  As referred hereinabove, on or about December 13, 2014 METRO GEM agreed to fund

the purchase and lease of a *2014 Ferrari F 12*  - the cost of which was approximately $484,000.00

85.  The ensuing lease was issued to defendant SWIZZ BEATZ PRODUCTIONS, INC.  for

a term of 60 months having a monthly rate of $6,988.00.

86.  The *2014 Ferrari F 12* vehicle was  notably paid until July, 2015 at which point in time

the lease otherwise went into default.

87.  METRO GEM learned later in 2015 that DANCY and DEAN conspired to secretly

sell the *2014 Ferrari F 12* to a third-party buyer.

88.  When confronted on this by METRO GEM, DEAN notably conceded that he did, in fact,

take possession of the subject vehicle and accepted the aforementioned lease and in turn operated

same for "at least one month".

89.  Following a complaint instituted by METRO GEM against DANCY AUTO, the New

York State Department of Motor Vehicles undertook a comprehensive investigation and thereafter

conducted a hearing on June 21, 2016, at the DMV offices in Garden City, New York.

90. That the respondent thereat, DANCY AUTO GROUP OF GREAT NECK and HILL - answered to allegations of misconduct and to charges under the NYS Vehicle and Traffic Law §415 –9 et. seq. (committing fraud or fraudulent practices as a registered automobile dealer).

91. That it was disclosed that DANCY AUTO failed to transfer ownership to METRO GEM after it allegedly withdrew the registration concerning the subject vehicle that was published to be in the name of (defendant) SWIZZ BEATZ PRODUCTIONS, INC.

92. That at some point in time after lease inception, DEAN gave the vehicle back to DANCY.

93. Thereafter, an order dated August 15, 2016 was issued by NYS Department of Motor Vehicles wherein DANCY AUTO was found to have committed fraud by failing to register and issue title to the subject *2014 Ferrari F 12* vehicle - in the name of METRO GEM and that they fraudulently and deceptively issued a false copy of a registration all while ensuring that monthly lease payments were delivered (so as to give the false impression that the vehicle was duly leased and registered to SWIZZ BEATZ PRODUCTIONS, INC. )

94. That as a consequence, DANCY AUTO was ordered to suffer revocation of its license and pay restitution and fines.

95. Prior to discovery of all the frauds, on June 1, 2015, METRO GEM agreed to fund the purchase and lease of a *2015 McLaren Spider* - the cost of which was approximately $389,000.00.

96. The ensuing lease was issued to defendant SWIZZ BEATZ PRODUCTIONS, INC. for a term of 60 months having a monthly rate of $6,069.18.

97. The *2015 McLaren Spider* vehicle was notably paid until June, 2016 until it too went into default.

98.  Upon information and belief, early in 2016 DANCY conspired again with DEAN in order to divert any inquiries by METRO GEM and attempt to avoid any responsibility including repossession efforts it was otherwise legally obligated to.

99.  That also on June 1, 2015, METRO GEM agreed to fund the purchase and lease of a *2015 Bentley Continental GT Convertible* - the cost of which was approximately $275,000.00.

100.  The ensuing lease was issued to defendant SWIZZ BEATZ PRODUCTIONS, INC. for a term of 60 months having a monthly rate of $3,999.00.

101.  The *2015 Bentley Continental GT Convertible* vehicle was notably paid until June, 2016 - at which point in time it too went into default.

102.  Upon information and belief, early in 2016 DANCY conspired again with DEAN in order to avert METRO GEM's recourse rights and to hide its vehicles.

103.  DEAN knew that METRO GEM was the true rightful owner of its leased vehicles yet nonetheless conspired with DANCY to disrupt their interests.

104.  That as of August, 2016 there were four vehicle leases that DEAN, SWIZZ BEATZ PRODUCTIONS, INC. and AK WORLDWIDE PRODUCTIONS, INC. served as lessees - that are still in default in addition to the *2014 Ferrari F 12*:    (i.e. the *2015 McLaren Spider, the 2015 Bentley Continental GT Convertible.* the *2014 Mercedes-Benz G Wagon 550* and *2013 Land Rover/Range Rover Supercharged*).

Predicate acts common to defendant JOHN WILLIAMS III:

105.  That on March 23, 2012, METRO GEM agreed to fund the purchase and lease of a *2005 Bentley Continental GT* - the cost of which was approximately $68,000.00.

106.  The ensuing lease was issued to defendant JOHN WILLIAMS III d/b/a James Willie

Funeral Home ("WILLIAMS") for a term of 30 months having a monthly rate of $1,710.00.

107.   The *2005 Bentley Continental GT*   was notably paid in accordance with the contract terms until – at which point in time it was traded in by WILLIAMS for a lease of another vehicle - a *2010 Porsche Panamera* on December 15, 2013.

108.   Accordingly, on December 15, 2013 METRO GEM agreed to fund the purchase and lease of a *2010 Porsche Panamera*  - the cost of which was approximately $74,000.00.

109.   Notwithstanding METRO GEM's funding, DANCY did not deliver title to METRO GEM and in fact sought issuance of title and subsequently attained such title (in or about July, 2014), in the name of DANCY AUTO GROUP LLC.

110.   Nonetheless, all payments were made up until June, 2015.

111.   Upon information and belief, DANCY and HILL conspired with WILLIAMS so as to have WILLIAMS divert future payments to DANCY - rather than METRO GEM.

112.   WILLIAMS knew that METRO GEM was the rightful owner yet surreptitiously conspired with DANCY to disrupt their interests.

113.   Further, upon information and belief, DANCY and HILL conspired with WILLIAMS to take steps and hide the subject vehicle from the re-possessive measures anticipated to be undertaken by METRO GEM beginning in July, 2015.

114.   Upon full investigation by METRO GEM, it was discovered that WILLIAMS' business in New York had been closed in January, 2012 (one year prior to the lease) and the address used on the initial lease documents was a foreclosed unoccupied home in Pennsylvania.

115.   That accordingly, the lease relative to the *2010 Porsche Panamera* was a sham.

116.   That the *2010 Porsche Panamera* was used in an unauthorized fashion interstate in

violation of 18 USC §§2321 and/or 2312, 2313 - even before any default occurred.

## AS AND FOR A FIRST CAUSE OF ACTION
(RICO §1962(c))

117.   Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "116" inclusive, with the same force and effect as if more fully set forth at length herein and states this count is specifically entered against defendants MACKY DANCY and TYRONE HILL (the "Count One Defendants").

118.   DANCY AUTO GROUP LLC. , DANCY AUTO GROUP OF GREAT NECK LLC and GREAT NECK AUTO SALES LLC are enterprise(s) engaged in acquisition and distribution of motor vehicles and services related thereto and those activities affect interstate commerce.

119.   Upon information and belief, by the close of year 2014, DANCY closed and rendered defunct - DANCY AUTO GROUP, LLC and transferred whatever assets to himself personally or other unknown individuals or into the surviving enterprise(s) - DANCY AUTO GROUP OF GREAT NECK, LLC. and later to GREAT NECK AUTO SALES LLC.

120.   The Count One Defendants are owners and are associated with the enterprise which are limited liability companies created by them pursuant to the laws of the State of New York

121.   The Count One Defendants agreed to and did conduct and participate in the conduct of the enterprises affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding METRO GEM.

122.   That the Count One Defendants sought to defraud plaintiff by falsifying lease and registration documents and delivering same both through US mail as well as Internet to the address(s) of METRO GEM with a preconceived scheme to exact financial harm thereon.

123.  That the Count One Defendants specifically sought to defraud plaintiff by undertaking the following predicate acts:

    a.  undertaking fraudulent practices as a registered automobile dealer (NYS Vehicle and Traffic Law §415–9 et. seq) - by intentionally failing to file a registration and subsequently failing to transfer ownership to METRO GEM regarding it's funding of a lease to a *2014 Ferrari F* 12.  As part of this scheme to avert issuing title in the name of METRO GEM, they deceptively advanced monthly lease payments with the intention provide a false impression that the vehicle was otherwise duly leased and registered to SWIZZ BEATZ PRODUCTIONS, INC. As later discovered, DEAN conspired with the Count One Defendants and gave the car to them to covertly resell.

    b.  With regard to the *2014 Mercedes-Benz G Wagon 550*  - issued to defendant SWIZZ BEATZ PRODUCTIONS, INC. - early in year 2016, DANCY conspired with DEAN so as to have DEAN deliver the subject vehicle to DANCY - without any approval or release by METRO GEM - as it was the Count One Defendants plan to surreptitiously sell same to a third-party - irrespective of the rights of METRO GEM.  These parties accordingly hid the subject vehicle, without making any further lease payments, in order to avoid recourse rights and repossession. Accordingly, the *2014 Mercedes-Benz G Wagon 550* was used in an unauthorized fashion and its illegal transfer interstate was in violation of 18 USC §§2321 and/or 2312, 2313.

    c.  With regard to a *2010 Porsche Panamera* , the Count One Defendants did not deliver title to METRO GEM but rather fraudulently issued title to themselves - in the name of DANCY AUTO GROUP LLC.   Upon information and belief, DANCY and

HILL conspired with the lessee WILLIAMS - so as to have WILLIAMS divert all future payments to DANCY - rather than METRO GEM. Furthermore, there was no legitimate financial basis to issue such a lease as the WILLIAMS "funeral business" had long been closed and the address used on the lease documents was of a foreclosed unoccupied home in Pennsylvania. That the Count One Defendants knew these falsehoods and nonetheless issued a lease and advanced payments thereon - so as to provide a false impression to METRO GEM that there was otherwise a legitimate lease in play. In reality, these defendants surreptitiously issue title in the name after conspiring with WILLIAMS - so as to receive whatever of lease payments the parties chose to make.

Accordingly, the *2010 Porsche Panamera* was and is currently being used in an unauthorized fashion interstate in violation of 18 USC §§2321 and/or 2312, 2313.

      d. That there are other suspected predicate acts undertaken by the Count One Defendants which presently cannot be reasonably set forth without substantive disclosure first being made thereon.

124. Specifically, with regards to the lease transaction concerning the *2014 Ferrari F 12* , the Count One Defendants (MACKY DANCY) telephoned plaintiff's president, Gary Denner, on December 13, 2014 in order to discuss purchasing said vehicle with a view to executing a lease to DEAN.

125. That the Count One Defendants prepared documents to memorialize the contemplated transaction and transmitted the lease cover, registration and supporting documents via Internet to METRO GEM.

126. Relying upon those documents, METRO GEM agreed to fund the purchase and lease

and delivered $484,000.00 to the Count One Defendants.

127. That METRO GEM accordingly expected a bona fide lease with DEAN's company - SWIZZ BEATZ PRODUCTIONS, INC. - for a 60 month term at the monthly lease rate of $6,988.00.

128. That the Count One Defendants thereafter ensured that the lease was paid in accordance with the contract terms for approximately six months.

129. Unbeknownst to METRO GEM, however, the Count One Defendants and DEAN conspired to sell the *2014 Ferrari F 12* to a third-party (who also may have been complicit with the sale).

130. Shortly after funding and start of the lease, the Count One Defendants surreptitiously withdrew the motor vehicle registration documents - without ever advising METRO GEM.

131. By advancing monthly payments to METRO GEM until July, 2015, the Count One Defendants intentionally provided a false impression that a bona fide lease was in place and that the subject vehicle was properly registered.

132. Moreover, without any suspicion especially given the customary delay in receiving title certificates - the Count One Defendants swiftly acted within their corrupt "window of opportunity" and effectuated said sale of the subject vehicle.

133. As a consequence, METRO GEM cannot exercise its recourse remedies pursuant to their lease terms - particularly repossession of the vehicle.

134. That all foregoing acts were underscored with misrepresentation(s) of material fact(s) which the Count One Defendants knew to be false and knew that METRO GEM would rely on same and as a result, proximately resulted in severe financial loss.

135. That these acts were routinely committed constituting multiple related acts of racketeering activity and as such form the predicate basis of such a RICO violation.

136. That as a consequence, the Count One Defendants have violated 18 USC §1341 and 1343.

137. That as a consequence, the Count One Defendants have violated 18 USC §§ 2312, 2313 and/or 2321.

138. That the Count One Defendants have conducted their acts through DANCY AUTO GROUP LLC., DANCY AUTO GROUP OF GREAT NECK LLC and GREAT NECK AUTO SALES, LLC and accordingly those entities serve as the enterprise in accordance with 18 USC §1961(4).

139. Upon information and belief, DANCY and HILL have been conspiring, via telephone and the U.S. mail - with other lessees with a view to having them redirect their lease payments that were otherwise due and owing to METRO GEM and that in some cases (including DEAN and WILLIAMS) such monies are now being forwarded to the accounts of DANCY and HILL or newly created entities affiliated with themselves - including defendant GREAT NECK AUTO SALES, LLC.

140. As a consequence, these predicate racketeering acts are not only related but are continuous in nature.

141. That accordingly these acts set forth above constitute a pattern of racketeering activity pursuant to 18 USC §1961(5).

142. That the Count One Defendants have directly and indirectly conducted and participated in the conduct of the enterprises affairs through the pattern of racketeering activity described above,

in violation of 18 U.S.C. §1962 (c ).

143. That the conduct was willful and that the Count One Defendants clearly had actual knowledge of the illegal activities.

144. That as a consequence, the Count One Defendants have violated 18 USC §§1341 and 1343.

145. That as a direct and proximate result of the Count One Defendants racketeering activities and violations of 18 U.S.C. §1962(c ), plaintiffs have been injured in their business and property in that they have suffered financial loss:

a. With regard to the *2014 Ferrari F 12* - the minimal amount of $584,018.00.

b. With regard to the *2014 Mercedes-Benz G Wagon 550* - the minimal amount of $31,913.50.

c. With regard to the *2015 McLaren Spider* - the minimal amount of $481,141.00.

d. With regard to the *2015 Bentley Continental GT Convertible* - the minimal amount of $290,199.52.

e. With regard to the *2013 Land Rover/Range Rover Supercharged* - the minimal amount of $72,572.77.

f. With regard to the *2010 Porsche Panamera* - the minimal amount of $86,427.64.

146. That treble damages, attorneys fees and other equitable relief pursuant to 18 USC §1964 is accordingly demanded against the Count One Defendants.


### AS AND FOR A SECOND CAUSE OF ACTION
(RICO §1962(d))

147. Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "146" inclusive, with the same force and effect as if more fully set forth at

length herein and states this count is specifically entered against defendants KASSEM DEAN,

KASSEM DEAN a/k/a SWIZZ BEATZ, SWIZZ BEATZ PRODUCTIONS, INC. (the "Count Two

Defendants").

148.   That the Count Two Defendants agreed and conspired to violate 18 U.S.C. §1962(c)

by engaging with the Count One Defendants in multiple motor vehicle lease contracts with the view

to defraud METRO GEM.

149.   That the Count Two Defendants schemed with the Count One Defendants in order to

promote a false impression that it was otherwise a righteous obligor that would act in good faith

and fair dealing in connection with leasing and taking registration to the aforementioned

motor vehicles.

150.   That by advancing monthly payments to METRO GEM until July, 2015, the Count Two

Defendants intentionally provided a false impression that a bona fide lease was in place and that the

subject vehicle was properly registered and possessed by themselves.

151.   That the Count Two Defendants, however, conspired with the Count One Defendants

in order to dispossess the aforementioned *2014 Ferrari F 12* vehicle while carrying the ruse

they were continuing to serve as bona fide lessee.

152.   That the Count Two Defendants intentionally conspired with DANCY to assist in a

fraudulent scheme the intention of which was to illegally transfer title to the *2014 Ferrari F 12*

thereby permitting a subsequent illegal sale to a third-party and did complicitly undertake such

predicate acts amidst a pattern of racketeering activity with an interstate enterprise

153.   That the Count Two Defendants further conspired with DANCY to assist in a scheme

the intention of which was to divert METRO GEM's rights in accordance with a certain lease

Page -22-

involving a *2014 Mercedes-Benz G Wagon 550.*

154. That the predicate acts concerning disposition of the subject *2014 Mercedes-Benz G Wagon 550* resulted in unauthorized use of a motor vehicle by an unknown party and its illegal transfer interstate was in violation of 18 USC §§2321 and/or 2312, 2313.

155. Furthermore, the Count Two Defendants have been in default, since June, 2016 - with regards to the other three leased vehicles presently outstanding as discussed hereinabove; to wit: the *2013 Land Rover/Range Rover Supercharged, 2015 Bentley Continental GT Convertible* and *2015 McLaren Spider.*

156. That despite all recourse activities by METRO GEM, the Count Two Defendants have defied same and, upon information and belief, having conspired further with the Count One Defendants - were schooled in matters to avoid repossession.

157. That as a consequence, the Count Two Defendants conducted and participated in the conduct of the affairs of the enterprise, all while knowing of its intent and illegal operation of racketeering activity.

158. That as a direct and proximate result of the Count Two Defendants conspiring in said racketeering activities in violation of 18 U.S.C. §1962(c ), plaintiffs have been injured in their business and property in that they have suffered financial loss:

a. With regard to the *2014 Ferrari F 12* - the minimal amount of $584,018.00.

b. With regard to the *2014 Mercedes-Benz G Wagon 550* - the minimal amount of $31,913.50.

c. With regard to the *2015 McLaren Spider* - the minimal amount of $481,141.00.

d. With regard to the *2015 Bentley Continental GT Convertible* - the minimal amount of $290,199.52.

e. With regard to the *2013 Land Rover/Range Rover Supercharged* - the minimal amount of $72,572.77.

159.  That treble damages, attorneys fees and other equitable relief pursuant to 18 USC §1964 is accordingly demanded against the Count Two Defendants.

## AS AND FOR A THIRD CAUSE OF ACTION
(RICO §1962(d))

160.  Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "159" inclusive, with the same force and effect as if more fully set forth at length herein and states this count is specifically entered against defendant JOHN WILLIAMS III (the "Count Three Defendant").

161.  That the Count Three Defendant agreed and conspired to violate 18 U.S.C. §1962(c) by engaging with the Count One Defendants in at least one  motor vehicle lease contract with the view to defraud METRO GEM.

162.  That the Count Three Defendant conspired with the Count One Defendants to assist in a fraudulent scheme the intention of which was to divert lease payments due METRO GEM in accordance with a certain lease involving a *2010 Porsche Panamera.*

163.  That the Count Three Defendant schemed with the Count One Defendants in order to promote a false impression that it was otherwise a righteous obligor that would act in good faith and fair dealing in connection with its lease.

164.  That notwithstanding, the Count Three Defendant diverted lease payments to the Count One Defendants and knew that the Count One Defendants had surreptitiously converted title.

165.  That the Count Three Defendant knew that METRO GEM was the true owner yet conspired with the Count One Defendants against METRO GEM's interests.

166.  Further, upon information and belief, the Count Three Defendant schemed with the Count One Defendants to take steps and hide the subject vehicle from the re-possession efforts undertaken by METRO GEM beginning in July, 2015.

167.  That despite all recourse activities by METRO GEM, the Count Three Defendant has defied same and, upon information and belief, having conspired further with the Count One Defendants - having been schooled in matters to avoid repossession efforts.

168.  That the predicate acts concerning use and disposition of the subject vehicle resulted in unauthorized use of a motor vehicle by an unknown party and its illegal transfer interstate was in violation of 18 USC §§2321 and/or 2312, 2313.

169.  That as a consequence, the Count Three Defendant conducted and participated in the conduct of the affairs of the enterprise, all while knowing of its intent and illegal operation of racketeering activity.

170.  That as a direct and proximate result of the Count Three Defendants racketeering activities and violations of 18 U.S.C. §1962(c ), plaintiffs have been injured in their business and property in that they have suffered financial loss:

a.  With regard to the *2010 Porsche Panamera* - the minimal amount of $86,427.64.

171.  That treble damages, attorneys fees and other equitable relief pursuant to 18 USC §1964 is accordingly demanded against the Count One Defendants.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Breach fiduciary duty)

172.  Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "171" inclusive, with the same force and effect as if more fully set forth at

length herein and states that a fiduciary relationship existed amongst METRO GEM and MACKY

DANCY, TYRONE HILL, DANCY AUTO GROUP LLC and  DANCY AUTO GROUP OF

GREAT NECK LLC ("DANCY").

173. That this relationship gave rise to a duty of loyalty on the part of DANCY to the plaintiff

and an obligation to act in the best interests of the plaintiff, as well as an obligation to act in good

faith in any matter relating to METRO GEM.

174.  That, notwithstanding,  DANCY advanced their own interests to the detriment of

METRO GEM.

175.  That METRO GEM sustained damages as a consequence.

176.  That the damages were proximately caused by DANCY's breach of their fiduciary duty.

177.  That as a consequence, METRO GEM has been damaged in the minimal sum of

$10,000,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Conversion)

178.  Plaintiff repeats and reiterates each and every allegation contained in paragraphs

numbered "1" through "177" inclusive, with the same force and effect as if more fully set forth at

length herein and states that DANCY did, in fact, take possession and/or fraudulently conveyed away

certain motor vehicles belonging to METRO GEM.

179.  That in so doing, DANCY knowingly and purposely retained same to the exclusion

of the rights of the owner - METRO GEM .

180. That DANCY never intended to pay the reasonable value of same.

181.  That, as a consequence, DANCY  converted said vehicles for their own use and

enjoyment and was unjustly enriched therefrom.

182.  METRO GEM  by reason of same was accordingly damaged in the minimum sum of $5,000,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Tortious interference with contract(s))

183.  Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "182" inclusive, with the same force and effect as if more fully set forth at length herein and states that there existed valid lease contracts between METRO GEM and the affirmation lessee's as discussed herein above.

184.  That DANCY maintained and possessed knowledge of those lease contracts.

185.  That it was DANCY's intent to procure breaches of those contracts without justification.

186.  That DANCY did, in fact, procure such breaches.

187.  That METRO GEM was damaged in the minimal sum of $5,000,000.00.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Negligent Misrepresentation)

188.  Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "187" inclusive, with the same force and effect as if more fully set forth at length herein and states that DANCY's aforementioned acts were deliberate and calculated.

189.  That false representations were made as statements of fact.

190.  That they were devised in order to gain an unfair advantage over METRO GEM by employing acts of bad faith, deceit and misrepresentation.

191.  That those statements were untrue and known to be untrue by DANCY and  that the representations were negligent.

192.  That the false statements were made to induce METRO GEM to act upon them and in particular - to issue monetary funding for the purchase of motor vehicle(s) intended on being leased.

193.  That METRO GEM did act upon the false statements to their detriment and were injured as a consequence.

194.  That accordingly, METRO GEM has been damaged, and continues to be damaged, in a minimal sum of $10,000,000.00.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
(Fraud)

195.  Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "196" inclusive, with the same force and effect as if more fully set forth at length herein and states that DANCY accordingly made false representations that were issued as statements of fact.

196.  That DANCY knew those statements were untrue and known to be untrue. That DANCY knew those statements and acts would induce METRO GEM to, in turn, act upon them by funding the purchase of the aforementioned motor vehicles.

197. That accordingly, METRO GEM did, in fact, rely upon those aforementioned statements and acts to their detriment.

198.  That as a consequence, METRO GEM was damaged in the minimal sum of $10,000,000.00.

## AS AND FOR A NINTH CAUSE OF ACTION
(Breach of lease contract)

199.  Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "198" inclusive, with the same force and effect as if more fully set forth at length herein and states that the Count Two Defendants, the Count Three Defendants and AK WORLDWIDE PRODUCTIONS, INC. entered into valid lease contracts with METRO GEM.

200.  That METRO GEM performed in accordance with said contracts by funding and in turn providing the delivery of the respective subject vehicles to the possession of those lessees.

201. That the Count Two Defendants, the Count Three Defendants and AK WORLDWIDE PRODUCTIONS, INC.  have, notwithstanding, failed to make all respective payments due under the aforementioned leases.

202. That METRO GEM delivered multiple notices of default to the Count Two Defendants, the Count Three Defendants and AK WORLDWIDE PRODUCTIONS, INC.

203.  That despite repeated efforts to collect, the Count Two Defendants, the Count Three Defendants and AK WORLDWIDE PRODUCTIONS, INC.  have failed to cure their defaults or otherwise to compensate plaintiff in full.

204.  As a consequence, METRO GEM  has been damaged, and continues to be damaged, in the minimal sum of $2,000,000.00.

## AS AND FOR A TENTH CAUSE OF ACTION
(Constructive trust)

205.  Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "204" inclusive, with the same force and effect as if more fully set forth at length herein and states that by having entered into a contractual relationship with METRO GEM

a close degree of trust and reliance to use reasonable care to impart correct information was expected.

206. That the information imparted by DANCY was, in fact, false and misleading and was accordingly relied upon by METRO GEM.

207. As a consequence, METRO GEM has been damaged.

208. METRO GEM has established that they are the equitable owners of the aforementioned motor vehicles along with other various assets of DANCY - including those vehicles remaining in possession of the Count Two Defendants and the Count Three Defendant.

209. As a consequence, a constructive trust has been created when these parties fraudulently gained possession and control of METRO GEM's property.

210. That the defendants gained and/or maintained possession as a consequence of taking advantage of their confidential relationship.

211. By virtue of their actions DANCY together with the Count Two Defendants and the Count Three Defendants - have unjustly enriched themselves.

212. Accordingly as DANCY may be holders in legal title to certain assets/property, and the Count Two Defendants and Count Three Defendants possess such assets - they may not, in good conscience, retain the beneficial interest to same.

213. That accordingly, equity should convert them.

214. That in accordance with 18 USC §1964, a constructive trust must be ordered converting all surreptitiously conveyed titles and other assets for the benefit of METRO GEM.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
(Replevin/Attachment)

215.  Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "214" inclusive, with the same force and effect as if more fully set forth at length herein and states that defendants actions have caused excessive financial harm.

216. That by reason of the misconduct of the defendants individually and collectively, METRO GEM has suffered the ability to exercise its recourse rights pursuant to the underlying motor vehicle leases.

217.  That the defendants have been successful at thwarting METRO GEM's rights to repossession of the motor vehicles in default.

218.  That METRO GEM has a legal possessory right to said motor vehicles and defendants have wrongfully distrained same.

219.  That if defendants' are not prevented from continuing their unlawful scheme - permanent and immediate irreparable harm will occur in that METRO GEM will forfeit and forever lose all rights for recourse thereon.

220.  That METRO GEM would ordinarily, upon repossession, be able to resell said motor vehicles - thereby currently securing best value – rather than suffering such continuing depreciation loss.

221.  Accordingly, METRO GEM will suffer loss of business and revenue for which no exact monetary value could be accorded.

222.  METRO GEM may, accordingly, have no adequate remedy at law which will compensate themselves for the above-mentioned conduct of the defendants.

223.  The relief sought will not impair defendant's rights and equity favors METRO GEM

in this case.

224.  Plaintiff's right to the relief sought is clearly appropriate and Plaintiff will likely

succeed on the merits of this case.

225.  That in accordance with 18 USC §1964 and pursuant to its right to possession, METRO

GEM should be awarded recovery of said motor vehicles through an order of replevin and/or

attachment.

**WHEREFORE,** Plaintiff demands judgement against the Defendants as follows:

> 1.  With regard to Plaintiffs First Cause of Action,  judgment against the Count One Defendants, compensatory and actual damages trebled, reasonable attorneys fees and an order of replevin concerning the subject motor vehicles in accordance with 18 USC §1964.

> 2.  With regard to Plaintiffs Second Cause of Action,  judgment against the Count Two Defendants, compensatory and actual damages trebled, reasonable attorneys fees and an order of replevin concerning the subject motor vehicles in accordance with 18 USC §1964.

> 3.  With regard to Plaintiffs Third Cause of Action,  judgment against the Count Three Defendant, compensatory and actual damages trebled, reasonable attorneys fees and an order of replevin concerning the subject motor vehicles in accordance with 18 USC §1964.

> 4.   With regard to Plaintiffs Fourth Cause of Action,  a minimal sum of $10,000,000.00 - together with the appropriate interest thereon.

> 5.  With regard to Plaintiffs Fifth Cause of Action,  a minimal sum of $5,000,000.00 - together with the appropriate interest thereon.

> 6.  With regard to Plaintiffs Sixth Cause of Action,  a minimal sum of $5,000,000.00 - together with the appropriate interest thereon.

> 7.  With regard to Plaintiffs Seventh Cause of Action, a minimal sum of $10,000,000.00 - together with the appropriate interest thereon.

> 8.  With regard to Plaintiffs Eighth Cause of Action,  a minimal sum of

$10,000,000.00 - together with the appropriate interest thereon.

9. With regard to Plaintiffs Ninth Cause of Action, a minimal sum of $2,000,000.00 - together with the appropriate interest thereon.

10. With regard to Plaintiffs Tenth Cause of Action, issuance of a *constructive trust* and granting such other and further relief as may be just and proper.

11. With regard to Plaintiffs Eleventh Cause of Action, issuance of an order of *replevin* and/or *attachment* and granting such other and further relief as may be just and proper.

PLAINTIFF DEMANDS TRIAL BY A JURY

Dated: New York, New York
     November 30, 2016

Your's etc.,

**PAUL J. SOLDA, ESQ.**
(Attorney for Plaintiff)
The Empire State Building
350 Fifth Avenue, 68th Floor
New York, NY 10018
(212) 967-3393
ps@soldlaw.com

**VERIFICATION**

STATE OF NEW YORK    )
                     :    SS
COUNTY OF NEW YORK   )

Gary Denner, being duly sworn, deposes and says:

1.    I am the President of Metro Gem Leasing & Funding Corporation, the Plaintiff in the within action and reside at 5 Windemere Way, Woodbury, New York

2.    I have read the foregoing Amended Complaint and know the contents thereof, and the same is true to my own knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters, believe them to be true.

Gary Denner

November 30, 2016

Sworn to:

FRANCES MELENDEZ
NOTARY PUBLIC STATE OF NEW YORK
No. 01ME6186012
Qualified in Queens County
My Commission Expires 1/25/20__